IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WESTCHESTER FIRE
INSURANCE COMPANY,

    Plaintiff,

vs.                                                                          Case No. 1:24-cv-00247-DHU-JFR

SCOTT DAVES, and KEITH EDWARDS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Scott Daves' Motion to Dismiss. Doc. 13. After carefully considering Defendant Daves' Motion, the attendant briefs, and being fully advised of the premises, the Court concludes that the Motion will be **DENIED**.

## I. BACKGROUND

According to Plaintiff's Complaint, Westchester, as Surety, issued multiple performance, payment and maintenance bonds (the "Bonds") on behalf of Bearcat Energy, LLC ("Bearcat"), as principal, for oil and gas leases in the state of Wyoming. Doc. 6, Am. Compl. ¶ 11. The total penal sum of the Bonds is $406,288.03. *Id.* To date Westchester has settled claims on Bond Nos. K08724593, K08792136, K09792331, and K08792379 resulting in Westchester sustaining losses under the Bonds of $333,980.00. *Id.* Westchester has additionally received a claim against Bond No. K08792173 with a penal sum of $72,308.03, which Westchester is in the process of investigating. Doc. 6, Am. Compl. ¶ 12. As such, Westchester's exposure under the Bonds is at least $406,288.03, exclusive of recoverable consultant costs, attorney's fees and costs, and pre and post judgment interest. *Id.*

The Bonds were issued in favor of the Wyoming Oil and Gas Conservation Commission ("WOGCC"), and the State of Wyoming, Office of State Lands & Investments ("WOSLI"), (together the "Obligees") as obligees. Doc. 6, Am. Compl. ¶ 18. As set forth in the Bonds, Westchester agreed to guarantee the obligations of its bond principal, Bearcat, on the Bonds. Doc. 6, Am. Compl. ¶ 13. When Bearcat failed to perform, Westchester was forced to do so. *Id.* On July 14, 2022, April 5, 2023, and July 19, 2023 the Obligees made demands on the Bonds for a combined amount of $446,240.93 asserting that Bearcat had failed to fulfil its contractual obligations, and had abandoned its Wyoming state oil and gas leases. Doc. 6, Am. Compl. ¶ 19.

As consideration for Westchester issuing the Bonds and other consideration, on or about July 30, 2012, the Defendants and others executed an agreement of Indemnity (the "GIA") in favor of Westchester. Doc. 6, Am. Compl. ¶ 14. The GIA provides:

> 2. **INDEMNITY & COLLATERAL FOR CLAIM** – The INDEMNITOR shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any third party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITOR is then liable to make such payment, and to place the SURETY in funds to meet all of its liability under any Bond, promptly upon request and before the SURETY may be required to make any payment thereunder; and copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITOR'S liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITOR shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

*Id.* Pursuant to the GIA, the Defendants agreed, among other things, to indemnify, and hold Westchester harmless from any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses of whatever kind that Westchester may sustain or incur by reason of having executed any bonds for or at the request of the Defendants and their fellow indemnitors. Doc. 6, Am. Compl. ¶ 16.[1] The Defendants also promised to place Westchester in funds sufficient to cover any and all actual and potential liability that Westchester might incur as a result of claims on any bonds. *Id*.

On September 6, 2022 and October 25, 2022 formal notice and demand was made on behalf of Westchester to the Defendants regarding their duty to defend and indemnify Westchester from and against all losses related to claims including, but not limited to, bond payments, costs, and attorneys' fees. Doc. 6, Am. Compl. ¶ 21. Westchester received no response from the Defendants in response to the September 6, 2022 or October 25, 2022 letters. *Id.*

On October 6, 2023, in response to additional claims being made against the Bonds by the Obligees, Westchester sent additional correspondence to the Defendants demanding indemnity and collateral pursuant to the GIA. Doc. 6, Am. Compl. ¶ 22. On October 27, 2023, Defendant Daves responded to Westchester's October 6, 2023 letter, and denied owing Westchester indemnity and refused to post collateral. *Id.* Westchester responded on November 7, 2023 further explaining to Defendant Daves obligations of indemnity and collateral. *Id.* Defendant Daves never responded to the November 7, 2023 letter. *Id*. Defendant Edwards has never responded to any of Westchester's correspondence or demands for collateral. *Id.* As of July 15, 2024, Westchester's

---

[1] Defendants fellow Bearcat filed bankruptcy on March 14, 2017 in United States Bankruptcy Court for the District of Colorado, Case No. 1:17-BK-12011. Doc. 6, Am. Compl. ¶ 16, n.3. Bearcat's Bankruptcy was pending at the time of the Complaint. *Id.*

losses under the Bonds amount to $333,980.00, exclusive of recoverable consultant costs, attorney's fees and costs, and pre and post judgment interest. Doc. 6, Am. Compl. ¶ 26. Plaintiff's Complaint asserts claims for 1) breach of contract; 2) injunctive relief; and 3) unjust enrichment.

On August 12, 2024, Defendant Scott Daves moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and (6). Doc. 13. As grounds for his Motion, Defendant Daves argues the Bonds were not properly executed, Doc. 13 at 2; the Bonds were expired, *id.*; the unjust enrichment claim and request for an equitable lien are invalid because insufficient factual detail alleged to demonstrate that the suretyship and/or the Bonds can be traced to Defendant's ownership of his residence, *id.* at 10; the unjust enrichment claim is also invalid *per se* because the GIA governs the parties' rights and obligations, the GIA required signatures on the Bonds, yet the Bonds were not signed, and Plaintiff cannot avoid those obligations by pleading an alternative unjust enrichment claim, *id.* at 11; and the Federal District Court for the District of New Mexico is the improper venue. *Id.* at 3. Regarding venue, Defendant Daves argues that the case should be dismissed for lack of venue because the forum selection clause is mandatory and points to New York state court as the proper location for litigation arising from the GIA. *Id.* at 4.

Plaintiff responded in opposition. Doc. 27. Among other arguments, Plaintiff argued that Defendant Daves' "contention regarding venue/forum is based upon an incorrect reading of the Indemnity Agreement, and is an attempt to misconstrue the Indemnity Agreement's terms to delay litigation." *Id.* at 4. Plaintiff's arguments related to venue primarily focus on whether the forum selection clause is mandatory or permissive as to each party, and Plaintiff ultimately argues that the clause is permissive as to Westchester, meaning that the District of New Mexico is the proper venue and the motion to dismiss should be denied. *Id.* at 5-7. Plaintiff also argues, "contrary to Mr. Daves's assertions, the Bonds were fully executed by Bearcat, Westchester, and provided to

4

the Obligees … Additionally, the 'expiration date' that Mr. Daves refers to is in the *description* of the Bonds, not in the Bonds themselves, and refers to the date by which Bonds must be executed, not the date that the bonded obligations cease." Doc. 27 at 4.

Because venue is a threshold issue, the Court first turns to the legal framework governing motions to dismiss based on improper venue.

## II. LEGAL STANDARDS AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal based on improper venue. Fed. R. Civ. P. 12(b)(3).  The Tenth Circuit previously approved of using a motion to dismiss under Rule 12(b)(3) to enforce a forum selection clause.  *See*, *e.g.*, *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992) ("A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).").  However, in 2013 the Supreme Court unequivocally held that motions pursuant to Federal Rule of Civil Procedure 12(b)(3) are the incorrect procedural mechanisms for the enforcement of forum selection clauses.  *See Atl. Marine Constr. Co., Inc. v. U. S. Dist. Court*, 571 U.S. 49, 134 S.Ct. 568, 575-579 (2013); *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (recognizing the Supreme Court's holding).

Federal Rule of Civil Procedure 12(b)(3) "allow[s] dismissal only when venue is . . . 'improper' in the forum in which [a case] was brought." *Atl. Marine*, 134 S.Ct. at 577.  Since the "federal venue provisions . . . alone define whether venue exists in a given forum[,]" *id.* at 578, resolving a Rule 12(b)(3) motion "depends exclusively on whether the court in which the case was

brought satisfies the requirements of federal venue laws." *Id.* at 577. Venue is proper "irrespective of any forum-selection clause." *Id.* at 578.[2]

As a result, in order to resolve Defendant's Motion to Dismiss based on Rule 12(b)(3), the Court must rely only on the relevant federal venue statute. However, the parties' briefs do not address the application of the relevant venue statute in this case. Therefore, the Court will deny the Rule 12(b)(3) motion at this stage. Defendant Daves may file a new motion to dismiss based on the federal venue provisions, in accordance with the procedure set forth in *Atlantic Marine.*

Additionally, the Court finds it is premature at this stage to address the merits of the Rule 12(b)(6) arguments because the parties contest whether the District of New Mexico is the proper venue. Therefore, the part of the Motion based on Rule 12(b)(6) will also be denied. The Court will allow the parties to raise their arguments regarding Rule 12(b)(6) once the question of venue has been decided.

### IV. CONCLUSION

For the reasons explained here, it is therefore ordered that Defendant Scott Daves' Motion to Dismiss (Doc. 13) is **DENIED**.

IT IS FURTHER ORDERED that Defendant Daves may file a new Rule 12(b)(3) motion in accordance with this opinion; such a motion must be filed within **60 days** of the issuance of this opinion.

---

[2] The correct mechanism for enforcement of a forum selection clause is either a motion for transfer under 28 U.S.C. § 1404(a) or a motion to dismiss on *forum non conveniens* grounds. *See Atl. Marine*, 134 S.Ct. at 579-80. Determining which motion is correct depends on the forum described by the clause at issue: "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.* at 579. In contrast, a motion to dismiss on *forum non conveniens* grounds is the proper mechanism for enforcement when the relevant clause points to a nonfederal forum. *Id.* at 580. Because the contract venue provision at issue in this case points to state court in New York, the proper mechanism to enforce the provision would be a motion to dismiss on *forum non conveniens* grounds.

IT IS SO ORDERED.

_____
DAVID HERRERA URIAS
United States District Judge