IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WESTCHESTER FIRE
INSURANCE COMPANY,

     Plaintiff,

vs.                                                                    Case No. 1:24-cv-00247-DHU-JFR

SCOTT DAVES and KEITH EDWARDS,

     Defendants.

## <u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant Scott Daves' Motion to Dismiss, filed March 24, 2025. Doc. 44. On April 14, 2025, Plaintiff responded. Doc. 50. On May 6, 2025, Defendant replied. Doc. 56. After carefully considering the parties' briefs, the record of the case, and applicable law, the Court finds that the motion is without merit and shall be **DENIED**.

**I.**
**BACKGROUND**

The facts of the case have been addressed at length in a previous Memorandum Opinion and Order (Doc. 42) and by the parties. Therefore, the Court need not restate at length the same here. In summary, according to Plaintiff's Complaint, Westchester Fire Insurance Company ("Westchester"), as Surety, issued multiple performance, payment and maintenance bonds (the "Bonds") on behalf of Bearcat Energy, LLC ("Bearcat"), as principal, for oil and gas leases in the state of Wyoming. Doc. 6, Am. Compl. at ¶ 11. As set forth in the Bonds, Westchester agreed to guarantee the obligations of its bond principal, Bearcat, on the Bonds. *Id.* at ¶ 13. As consideration for Westchester issuing the Bonds and other consideration, on or about July 30, 2012, the

1

Defendants and others executed an agreement of Indemnity (the "GIA") in favor of Westchester. *Id.* at ¶ 14.

On July 14, 2022, April 5, 2023, and July 19, 2023, the Obligees made demands on the Bonds for a combined amount of $446,240.93. *Id.* at ¶ 19. When Bearcat failed to perform, Westchester was forced to do so. *Id.* As of July 15, 2024, Westchester's alleged losses under the Bonds amount to $333,980.00, exclusive of recoverable consultant costs, attorney's fees and costs, and pre- and post-judgment interest. *Id.* at ¶ 26. Plaintiff Westchester brought three claims against Defendants for (1) breach of contract; (2) injunctive relief; and (3) unjust enrichment.

On March 24, 2025, Defendant Scott Daves moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 44. As grounds for his Motion, Defendant Daves argues that Plaintiff Westchester's cause of action against Defendants Scott Daves and Keith Edwards accrued in March 2017 when Bearcat became insolvent. *Id.* at 2. The case before this Court was filed on March 11, 2024, which Defendant argues is approximately one year after the six-year statute of limitations expired. *Id.* Thus, Defendant argues that Westchester's claims against Daves must be dismissed as a matter of law pursuant to Rule 12(b)(6).

On April 14, 2025, Plaintiff responded in opposition. Doc. 50. As grounds for its response, Plaintiff advances three main arguments. First, Westchester argues that the statute of limitations was extended under New York's "continuing wrong doctrine," applicable in cases where there is a series of continuing wrongs committed by the breaching party. Under this doctrine, according to Plaintiff, each instance of the Obligees making demands for the Bonds—and Daves failing to pay them—started anew the statute of limitations, and thus, Plaintiff has brought its claims within the statute of limitations period. *Id.* at 7.

Second, Plaintiff argues that its claim is for indemnification, and the statute of limitations for indemnity claims first accrued when Westchester made payments on the bond claims in October 2022. In support of this argument, Westchester also attaches to its Response an affidavit by Jeffrey T. Savage, a Senior Surety Claims Specialist with Westchester's parent company, explaining that Westchester began resolving the bond claims on or about October 11, 2022, just over three years ago. *Id.* at 10 (citing Doc. 50-1).

Lastly, Westchester argues that the language contained in the GIA created distinct obligations—the obligation to pay premiums and the obligation to post collateral security—and thus separate causes of action with separate statutes of limitations. *Id.* at 11. According to Plaintiff, "the failure to pay premiums is an immediate, distinct breach, while the failure to post collateral security operates as a separate breach, relating to a separate contractual obligation, upon demand by the surety." *Id.* at 12.

On May 6, 2025, Defendant Scott Daves replied in support of his motion. Doc. 56. First, he emphasizes the narrow use of the continuing wrong doctrine—typically employment discrimination, not contract or bankruptcy—and argues that even if it applies, Plaintiff did not allege multiple breaches indicative of a continuing wrong in its Complaint. *Id.* at 4-5. Second, he argues that Plaintiff's Complaint characterizes its cause of action as a breach of contract claim, not an indemnification claim. *Id.* at 6. Daves points out that even though Westchester's Complaint references Defendants' failure to indemnify as a breach, it does not explicitly allege that it tendered payments to third parties, *id.* at 8, "which is an essential part of an indemnification claim." *Id.* at 7 (citing *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 279 (6th Cir. 2018)). Finally, Defendant argues the GIA should be read as a whole, not separate covenants, in

accordance with New York precedent and the allegations in Plaintiff's Amended Complaint—which do not discuss separate covenants. *Id.* at 10-11.

## II.
## LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017).

Failure to file suit within the applicable statute of limitations period may be raised in a motion to dismiss under Rule 12(b)(6) "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Herrera v. City of Española*, 32 F.4th 980, 991 (10th Cir. 2022) (citing *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)). "If from the complaint, 'the dates on which the pertinent acts occurred are not in dispute, [then] the date a statute of limitations accrues is . . . a question of law' suitable for resolution at the motion to dismiss stage." *Id.* (citing *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995)).

A Rule 12(b)(6) motion is generally decided on the face of the pleadings themselves, and consideration of matters outside the pleadings converts a Rule 12(b)(6) motion into a motion for summary judgment. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005) (citing FED. R. CIV. P. 12(b); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). Exhibits

4

attached to a complaint are treated as part of the pleadings for the purposes of ruling on a motion to dismiss. *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 964-65 (10th Cir. 1994); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.") (citation omitted).

### III.
### DISCUSSION

The Indemnity Agreement executed by the parties states that "the rights and liabilities of the parties [shall be] determined in accordance with the laws of the State of New York." Doc. 6-2., Am. Compl. Ex. 2 at 2. Both parties acknowledge that New York law applies. Doc. 44 at 5; Doc. 50 at 5. The Complaint alleges three claims against Defendants: (1) breach of express contract; (2) injunctive relief; and (3) unjust enrichment. New York state law sets a six-year statute of limitations for each of these claims, *see* N.Y. C.P.L.R. § 213(1)-(2) (2025). The parties do not dispute the applicable statutes of limitations, but they disagree as to when Westchester's claims accrued, triggering the limitations period. Defendant Daves asserts that the limitations period began to run in March 2017 when Bearcat became insolvent and stopped making premium payments. Doc. 44 at 2. Plaintiff, on the other hand, advances three theories that would bring its suit within the six-year statute of limitations. The Court addresses each of them in turn.

### A. Continuing Wrong Doctrine

First, Westchester argues that the statute of limitations was tolled under New York's "continuing wrong doctrine." In cases where there is a series of continuing wrongs, the continuing

wrong doctrine tolls the statute of limitations to the date of the last wrongful act. *See Selkirk v. State of New York*, 249 A.D.2d 818, 819 (N.Y. App. Div. 1998). Application of the doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. *Id.* But "the mere fact that a claim has accrued and the time to bring an action on it has commenced to run does not mean that a new claim, with a new limitations period, may not arise out of a new set of facts that forms part of a series with the original wrong." *CWCapital Cobalt VR Ltd.* v. *CWCapital Invs. LLC*, 195 A.D.3d 12, 18 (N.Y. App. Div. 2021).

Defendant Daves asserts that the continuing wrong doctrine applies only in limited circumstances, such as employment discrimination claims, not contract actions. Doc. 56 at 4 (citing *Gavin v. Club Holdings*, LLC, 2016 WL 1298964, at *7 (D. Del. Mar. 31, 2016) (explaining that the continuing wrong doctrine is not typically applied in bankruptcy or contract actions because these claims usually involve discrete wrongful acts)). It is true that this doctrine has typically been applied to employment discrimination suits where the defendant has engaged in a continuous policy of discrimination. *Day v. Moscow*, 769 F. Supp. 472, 477 (S.D.N.Y. 1991). However, New York courts have also applied the doctrine to contract actions "when the contract imposes a continuing duty on the breaching party." *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (N.Y. App. Div. 2017) (citations omitted). In such cases, courts have found that a new claim accrued each time the defendant failed to uphold its ongoing duty to the plaintiff. *See Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 608-09, 611 (N.Y. 1979) (holding that a new cause of action accrued each time defendant, who promised under a 20-year bond to make necessary repairs to plaintiff's roof, failed to make repairs during the life of the bond); *CWCapital Cobalt VR Ltd.*, 195 A.D.3d at 19-20 (applying the continuing wrong doctrine to an action for breach of a collateral management agreement where the language of the agreement conferred on defendants a continuing duty to

6

manage plaintiff's investment and plaintiff alleged multiple failures to properly do so); *cf. Henry v. Bank of Am.*, 147 A.D.3d at 601-02 (recognizing the same principle but declining to apply the doctrine where there was just one alleged wrong with continuing effects, rather than multiple breaches of a recurring duty).

In its Response to Defendant's Motion to Dismiss, Plaintiff contends that Daves had a continuing duty under the GIA to post collateral and indemnify Westchester for claims arising from the Bonds issued on behalf of Bearcat. Doc. 50 at 6. As such, according to Plaintiff, under the continuing wrong doctrine, each instance of the Obligees making demands for the Bonds started anew the statute of limitations, and thus, Plaintiff has brought its claims within the statute of limitations period. *Id.* at 7. Defendant Daves claims that, even if the continuing wrong doctrine can be applied to contract actions, it fails here because the Complaint alleges a single breach with ongoing effects, not multiple breaches indicative of a continuing wrong. Doc. 56 at 4-5 (citing various instances in the Amended Complaint where Plaintiff referred to Defendant's breach in singular form). Daves contends that the "Amended Complaint only alleges continuing effects of [his] breach stemming from Bearcat's bankruptcy in 2017[.]" *Id.* at 5.

Defendant's assertion is not supported by the allegations in the Amended Complaint or the language of the GIA, included as an exhibit to the Complaint. Taking Plaintiff's non-conclusory allegations in the Complaint as true, Westchester has alleged a continuing wrong. First, the Amended Complaint alleges that the parties executed an Indemnity Agreement (the "GIA"), whereby Bearcat, Edwards, and Daves agreed to indemnify Westchester from "any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses . . . which [Westchester] *shall at any time incur*" and to "place [Westchester] in sufficient funds to meet all of its liability under any Bond, promptly upon request and before [Westchester] may be required to make any

7

payment thereunder[.]" Doc. 6 at ¶ 15 (emphasis added); *see also* Doc. 6-2 ("Exhibit 2"). This language indicates an ongoing duty held by Defendants to post collateral and indemnify Westchester for claims arising from the Bonds issued on behalf of Bearcat, limited only by the reason, not by the timing, of Westchester's liability. The continuing duty imposed by the GIA means that the continuing wrong doctrine can be applied to this action so long as the Complaint actually alleges multiple breaches of this ongoing duty.

In the Amended Complaint, Westchester alleges that it "issued multiple performance, payment and maintenance Bonds" on behalf of Bearcat, that it agreed to guarantee the obligations of Bearcat on the Bonds, and that it was forced to perform on the Bonds when Bearcat failed to do so. Doc. 6 at ¶¶ 11, 13. Specifically, Plaintiff alleges that the Obligees made demands on the Bonds on July 14, 2022, April 5, 2023, and July 19, 2023, *id.* at ¶ 19; that Westchester notified Defendants of the demands and their duty to defend and indemnify on September 6, 2022, October 25, 2022, and October 6, 2023, *id.* at ¶¶ 21-22; and that Defendants either did not respond or denied owing a duty and did not post collateral or indemnify Westchester for any of the three claims made by the Obligees, *id.* at ¶¶ 21-22, 24. These facts, as alleged, represent multiple breaches of Defendants' ongoing duty to post collateral and indemnify Westchester for claims related to the Bonds.

It cannot be said that Westchester's alleged harms are merely the continuing effects of Bearcat's initial insolvency and default on premiums in March of 2017, as Defendant Daves suggests. The demands made by the Obligees, and Westchester's duty to pay them, arose from the Bonds themselves, not Bearcat's bankruptcy. And each failure to post collateral or indemnify Westchester represents an omission by Bearcat and Daves themselves which independently violates their duty under the GIA. While a breach of the GIA did occur when Bearcat first defaulted

on its premiums, Bearcat and Daves' repeated failure to post collateral or indemnify Westchester forms a separate series of wrongs under the GIA and a continuous breach of its ongoing duty to do so. *See CWCapital Cobalt*, 195 A.D.3d at 19. This warrants application of the continuing wrong doctrine.

Application of the doctrine means that the statute of limitations only began to run on the date of Defendants' last wrongful act with respect to their failure to post collateral or indemnify Westchester for claims owed under the Bonds. Based on the allegations in the Amended Complaint, there is admittedly some ambiguity as to when the alleged breaches occurred. Daves did not immediately breach the GIA[1] when the Obligees made demands on Westchester. Rather, he breached at some point after, when he knew of the demands but failed to post collateral or indemnify Westchester. The Amended Complaint does not make clear the relevant dates, but it is more than reasonable for this Court to assume the alleged breaches happened at some point after the Obligees made their demands.[2] Westchester's allegations all relate to bond claims made in 2022 and 2023—less than six years before Westchester initiated the present suit. *See* Doc. 1 (Original Complaint filed on March 11, 2024). Based on the information before this Court for the purposes of a Motion to Dismiss, and after applying the continuing wrong doctrine, dismissal is not warranted on statute of limitations grounds.

---

[1] For the purposes of deciding this Motion to Dismiss, Plaintiff's allegations in the Amended Complaint are taken as true. Statements about Daves' "breach(es)" in this opinion do not amount to a finding by this Court that Daves did, in fact, breach the GIA as alleged.

[2] Should evidence come to light during discovery suggesting that the alleged breaches happened more than six years before Westchester filed suit, the Court may entertain arguments for dismissal on statute of limitations grounds in a motion for summary judgment. *Cf. Herrera v. City of Española*, 32 F.4th at 991.

## B. Indemnification

Second, Plaintiff Westchester argues that its claim is for indemnification, and the statute of limitations for indemnity claims first accrued when Westchester made payments on the bond claims in October 2022. *Id.* at 8-10 (relying on an affidavit by Jeffrey T. Savage, attached as an exhibit to the Response, explaining that Westchester began resolving the bond claims on or about October 11, 2022, just three years ago). Applying the continuing wrong doctrine to this case provides sufficient grounds to deny Defendant's Motion to Dismiss. However, because this argument raises the question of whether Plaintiff has pled a claim for indemnification, the Court finds it important to address.

"Where a suit invokes several causes of action, each is subject to a distinct statute of limitations; thus, distinct accrual periods should apply as to each cause of action." *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1428 (10th Cir. 1996). New York courts recognize a distinction between claims for indemnification and those for breach of contract. *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, 660 F. App'x 554, 566 (10th Cir. 2016) (citing *Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262 (N.Y. App. Div. 1999)). "The statute of limitations on a claim for indemnity or contribution accrues only when the person seeking indemnity or contribution has paid the underlying claim." *Tedesco v. A.P. Green Industries, Inc.*, 8 N.Y.3d 243, 247 (N.Y. 2007) (citing *McDermott v. City of N.Y.*, 50 N.Y.2d 211, 216 (N.Y. 1980)).

The Amended Complaint alleges that "[o]n July 14, 2022, April 5, 2023, and July 19, 2023, the Obligees made demands on the Bonds for a combined amount of $446,240.93." *Id.* at ¶ 19. According to the Amended Complaint, Westchester then sent multiple notices and demands to Defendants regarding their duty to defend and indemnify, to which Defendants either did not respond or refused to post collateral. *Id.* at ¶¶ 21-24. As a result, Westchester alleges losses under

the Bonds totaling $333.980.00 to date. *Id.* at ¶ 26; *see also* Doc. 6-3 at 17, 22, 26 (stating Westchester had already paid $100,000.00 to the Obligees under one of the bonds). In its Response to Defendant's Motion to Dismiss, Plaintiff asserts that it began settling claims against the bonds on or about October 11, 2022, just over two years before filing the present suit. Doc. 50 at 10 (citing 50-1, Exhibit 1).

Westchester is right that claims for indemnification do not accrue until payment is made. And while Westchester did not explicitly assert a claim for indemnification, the Amended Complaint is replete with allegations suggesting and supporting an indemnification claim. For example, Westchester alleges that Defendants have not posted collateral or paid it for any of the bond claims, *id.* at ¶ 24, suggesting that Defendants are presently obligated to indemnify Westchester, *id.* at ¶ 37, and specifically requests that this Court order Defendants "to *indemnify* and hold Westchester harmless from and against any and all liabilities . . . incurred by Westchester on account of the issuance of the Bonds[,]" *id.* at 10 (emphasis added). Most importantly, Westchester alleges in its Complaint that it has settled claims on some of the bonds, resulting in a loss. *Id.* at ¶ 11. Taking Plaintiff's allegations in the light most favorable to it, Westchester has alleged payment to a third party, which forms the "gravamen" of an indemnity claim. *See Lehman Bros. Holdings, Inc. v. Univ. Am. Mortg. Co., LLC*, 660 F. App'x 554, 568 (10th Cir. 2016) (citing *City of New York v. Lead Indus. Ass'n, Inc.*, 222 A.D.3d 119, 126-27 (N.Y. App. Div. 1996)).

Westchester seeks to demonstrate the timeliness of its claim through an affidavit, attached to the Response, stating that it began resolving claims on the bonds on or about October 11, 2022, when it tendered payment on one of the bonds. Doc. 50-1 at 3-4. However, the affidavit attached to Westchester's Response cannot be considered on a Motion to Dismiss because it is not referenced in the Complaint. *See Jacobsen*, 287 F.3d at 941. As such, the Court cannot consider

the dates of accrual discussed in the affidavit without converting this Motion to Dismiss into a Motion for Summary Judgment, giving the parties notice of the changed status of the motion, and providing the parties the opportunity to present all material relevant to a summary judgment motion under FED. R. CIV. P. 56. *See Miller v. Glanz*, 948 F.2d at 1565. The Court declines to do this and instead finds that on this issue and at this stage of the litigation, dismissal under Rule 12(b)(6) is not appropriate. *Cf. Herrera v. Española*, 32 F.4th at 991. This provides an additional and independent ground for denying Defendant Daves' Motion to Dismiss.

### C.  Separate Obligations

Lastly, Westchester argues that the language contained in the GIA created distinct obligations—the obligation to pay premiums and the obligation to post collateral security—and thus separate causes of action with separate statutes of limitations. *Id.* at 11. According to Plaintiff, "the failure to pay premiums is an immediate, distinct breach, while the failure to post collateral security operates as a separate breach, relating to a separate contractual obligation, upon demand by the surety." *Id.* at 12.

Neither party's briefing is exactly on point on this issue, as it does not appear that New York courts have addressed it. Plaintiff cites case law from other states to suggest that indemnification agreements that cover both liability and loss can be read as separate covenants, one of which is actionable when liability is fixed and the other of which is actionable once actual loss is incurred. *See First Indemnity of Am. Insurance Co. v. Kemenash*, 744 A.2d 691, 698 (N.J. Super. Ct. App. Div. 2000); *United States Credit Bureau v. Claus*, 179 P.2d 36 (Cal. Ct. App.

1947).[3] But these cases speak precisely about finding multiple covenants within a single agreement to indemnify for both liability and loss. They do not address finding separate covenants in altogether separate provisions of a contract—though it seems reasonable to infer that if a court can read separate obligations within *the same* contract provision, it can do so with respect to two *different* provisions.

On the other hand, Defendant emphasizes New York precedent stating that "a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." Doc. 56 at 11 (quoting *Ficel Transp., Inc. v. State of New York*, 209 A.D.3d 1153, 1155 (N.Y. App. Div. 2022)). However, this general principle of contract interpretation does not refute the possibility, supported by the case law above, that one contract may contain multiple obligations that give rise to distinct causes of action. Finding separately actionable obligations in a contract may not always frustrate the general purpose of the contract, particularly if the contract contemplates a long-term relationship and ongoing duties by both parties over time.

Ultimately, the Court need not make a determination as to the existence of separate obligations in the GIA because application of the continuing wrong doctrine and the existence of a claim for indemnification defeats Defendant Daves's Motion to Dismiss. However, applying the appropriate standards at the pleading stage, the Court also finds it plausible that the GIA contained separately actionable obligations, the latter of which is at issue here and occurred within the

---

[3] At least one other court has found the opposite. *See Balboa Ins. Co. v. Zaleski*, 532 A.2d 973 (Conn. App. Ct. 1987). But the *Kemenash* Court found the court's reasoning in *Balboa* flawed and declined to follow it, also pointing out that the Connecticut legislature overruled the decision by statute. *Kemenash*, 744 A.2d at 698.

applicable statute of limitations. This, too, provides a basis for denying Defendant's Motion to Dismiss.

## IV.
## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Scott Daves' Motion to Dismiss (Doc. 44) is **DENIED**.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE